**ORIGINAL DOCUMENT
DO NOT REMOVE**

MOTOR SHOP AGREEMENT

BY AND BETWEEN

MELTON ELECTRIC COMPANY

AND

IBEW LOCAL #34

FOR THE PERIOD

JUNE 1, 2004, THROUGH May 31, 2005

Mr. Michael Everett
Business Manager
IBEW Local Union #34
400 N. E. Jefferson
Peoria, IL. 61603
(309) 673-3691

Mr. Robert J. Adams
President
Melton Electric Company
5900 S. W. Washington
Bartonville, IL. 61607
(309) 697-1422



EXHIBIT
A

(c) In the event the quality control committee determines by majority vote that improper or poor workmanship was the sole reason for return, the responsible employee may be required by the committee to make corrections on improper workmanship for which he is responsible on his own time. In any event such time shall not exceed four (4) hours and shall not result in a reduction in the normal work hours.

(d) An employee shall not be responsible for improper work performed under the direction of the employer or the employer's representative, lack of proper information, tools or repair equipment.

(e) Bargaining unit members of the quality control committee shall rotate every three (3) months and will be selected by the union steward.

(f) The employer agrees that no entry shall be made into an employees personal file or record pertaining to poor or improper workmanship unless the Quality Control Committee has ruled accordingly.

## ARTICLE V
## EMPLOYEE BENEFITS

### Section 5.01 NEBF

It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

(b) The individual employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(c) An individual employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

(d) The failure of an individual employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of his labor agreement.

Section 5.02 PAID VACATION SCHEDULE

(a) An employee who has been employed with the Company twelve (12) months, but less than twenty-four (24) months, will be eligible for forty (40) hours vacation with pay equal to two per cent (2%) of the employee's gross wages from the previous year's W-2 form issued by Melton Electric Company.

(b) Each employee who has been with the Company twenty-four (24) full months, but less than seven (7) full years, will be eligible for eighty (80) hours vacation with pay equal to four per cent (4%) of the employee's gross wages from the previous year's W-2 form issued by Melton Electric Company.

(c) Each employee who has been with the Company seven (7) full years, will be eligible for 120 hours (3 weeks) vacation with pay equal to six per cent (6%) of the employee's gross wages from the previous year's W-2 form issued by Melton Electric Company. Two weeks (2) may be consecutive; the third week shall be taken at a time mutually agreed upon between the employer and the employee.

(d) Each employee who has been with the company fifteen (15) full years will be eligible for 160 hours (4 weeks) vacation pay equal to eight per cent (8%) of the employee's gross wages from the previous year's W-2 form issued by Melton Electric Company. Two weeks may be

consecutive; the third and fourth week shall be taken at a time mutually agreed upon between the employer and the employee.

(e) If a paid holiday occurs during the employee's vacation, he shall receive holiday pay for such holiday by receiving one (1) extra day added to the vacation period.

(f) An employee terminated without prejudice by the Company, shall be eligible for pro-rated vacation pay, for each month worked since January 1st.

(g) If a vacation is earned at January 1st of any year, the employee must take the vacation during that calendar year. There will be no vacation carryovers and no payment if the vacation is not used. In the event that the Company requests an employee to work part or all of his scheduled vacation, the employee may, at his option, elect to be reimbursed for a maximum of 50% of his remaining vacation hours. The balance of earned vacation must be taken in normal fashion.

Section 5.03 401(k) PLAN

Effective June 1, 1993, the Employer will contribute the sum of fifty-six dollars ($56.00) per month on behalf of each active bargaining unit employee into the Melton Electric Employer 401(k) program. Contributions shall be credited to each individual's account and eligible employees may defer additional contributions to the credit of their account up to the maximum allowed by law. The Employer contribution will be subject to vesting provisions as defined in the Plan Document herewith made a part of this Agreement. The plan will be administered by the Equitable Life Assurance Society of the United States.

Section 5.04 HEALTH & WELFARE

Effective June 1, 2004 the employer shall contribute five dollars and fifteen cents ($5.15) per hour for each productive hour worked by all employees covered by this Agreement.

The minimum contribution paid per employee per month shall not be less than one hundred forty (140) hours except in the case of newly hired employees in the process of

establishing initial eligibility. The payment shall be made by check or draft and shall constitute a debt due and owing to the NECA-IBEW Welfare Trust Fund on the last day of each calendar month. The payment and payroll report shall be mailed to reach the office of the NECA-IBEW Welfare Trust fund, 2120 Hubbard Ave., Decatur, Illinois 62526, not later than fifteen (15) calendar days following the end of each calendar month. Individual Employers who fail to make payment as provided above, shall be subject to having this agreement terminated upon seventy-two (72) hours notice in writing being served by the Union provided the Employers fail to show satisfactory proof that delinquent payments have been made to the Welfare Fund.

The Employer agrees to be bound by the Amended Agreement and Declaration of Trust of the NECA-IBEW Welfare Trust Fund, and by any further amendments thereto.

The Employer agrees that it shall be bound by all actions taken by the Trustees of the NECA-IBEW Welfare Trust Fund in the administration of the Fund pursuant to the provisions of the Amended Agreement and Declaration of Trust or as it may hereafter be amended.

The Employer will pay for all health & welfare costs and pick up all future increases for the term of this Agreement.

Section 5.05 NECA-IBEW PENSION TRUST

(a) Employer agrees to be bound by the Agreement and Declaration of Trust entered into June 1, 1972, establishing the NECA-IBEW Pension Trust Fund, and by any amendments to said Trust Agreement.

(b) Employer irrevocably designates as his representative among the Trustees of said fund such Trustees as are named in said Agreement and Declaration of Trust as Employer Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust as that document may be amended from time to time.

(c) Effective November 1, 2002, the Employer shall contribute into the NECA-IBEW Pension Trust Fund One Dollar and Thirty cents($1.80) per hour for each hour worked in the preceding month, for all employees covered by this

Agreement. Contributions shall be made on or before the 15th of the month following the month for which they are due. Payment by separate check shall be mailed to NECA-IBEW Pension Trust Fund, 2120 Hubbard Ave. Decatur, IL 62526.

Section 5.06 PAID HOLIDAYS

Employees will be paid the straight time hourly rate for eight (8) hours for the following holidays or days celebrated as such, however if the holiday falls on Saturday, it will be observed on Friday, and if it occurs on Sunday, will be observed on Monday. These holidays are namely: New Year's Day, Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, the day after Thanksgiving Day, Christmas Eve Day, and Christmas Day.

The employee must work the day previous to and the work day following said holidays unless the employer is furnished with a doctor's certificate showing that he was confined to home or hospital because of illness.

Section 5.07 FLEX DAYS

Each employee who has completed one (1) year or more service with the Company prior to June 1, 1994, or any subsequent year shall be eligible for up to two (2) flex days each year.

(a) No more than one (1) flex day may be taken per month.

(b) All flex days will be taken for the entire day. (No part days will be permitted).

(c) Days must be by prior arrangement with the shop foreman with the exception of illness or family death.

(d) Consecutive use of flex days may be taken in conjunction with an illness. However, a doctor's statement may be required by the Employer.

(e) Up to two (2) days may be taken consecutively for death in the immediate family; immediate family is defined as current spouse, mother, father, stepmother, stepfather, mother of current spouse, father of current spouse, grandmother, grandfather, grandmother of current spouse, grandfather of current spouse, brother, half brother, step

17

brother, sister, half sister, step sister, brother of current spouse, sister of current spouse, child (natural, adoptive or step), grandchild and grandchild of current spouse.

(f) Earned but unused flex days that remain on the last day of a calendar year may not be carried over.

## ARTICLE VI
## MISCELLANEOUS

### Section 6.01 SAFETY

It shall become the responsibility of all employees and employers to promote generally good safety practices. All employers and employees must comply with the State of Illinois Health and Safety laws, and Department of Labor, Occupational Safety and Health Standard. (OSHA Act.)

### Section 6.02 DISCRIMINATION

Neither the Company nor the Union will discriminate against any individual because of such individual's race, color, religion, sex, age or national origin.

### Section 6.03 Training

Trainee - It will be the obligation of the trainee to study textbooks furnished by the employer (Text books mutually agreed on by the employer and union) and pass a satisfactory examination, both written and oral. Such examination will be given jointly by a representative of the Employer and a representative of the Union (The representative for the union may be the Steward). It is understood and agreed that the employer and the union will cooperate in establishing this training program, including reviews of tests and testing procedures. Once an employee has started in the trainee program, the trainee shall continue through the program until completion, unless he is laid off due to lack of work or inability to progress in his training. All time spent in formal training (i.e., community college work, factory training, etc.) shall be considered as time worked in determining total hours accrued in the training schedule.